# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINCOLN GENERAL INSURANCE COMPANY,** : | CIVIL ACTION NO. 1:11-CV-1127 |
| : | |
| : | **(Judge Conner)** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **KINGSWAY AMERICA AGENCY, INC.,** : | |
| **f/k/a AVALON RISK MANAGEMENT,** : | |
| **INC., and MATTONI INSURANCE** : | |
| **BROKERAGE, INC.,** : | |
| : | |
| **Defendants** : | |

## **MEMORANDUM**

This case is about insurers, their agents, the agents of their agents, and the expensive mistakes that sometimes occur within complex business relationships. Plaintiff Lincoln General Insurance Company contends that it suffered a loss of roughly $1 million because of its agents' carelessness in issuing a particular insurance policy in its name. Counts I and II of Lincoln's complaint (Doc. 1) set forth claims against defendant Kingsway America Agency, Inc., formerly known as Avalon Risk Management, Inc., seeking recovery under theories of indemnification and breach of contract; Counts III and IV allege breaches of fiduciary duty by Kingsway and by defendant Mattoni Insurance Brokerage, Inc., respectively.

Presently before the court are defendants' motions (Docs. 9, 10) to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Although the motions were filed separately, defendants are represented by the same counsel, and the supporting briefs essentially present the same arguments: that in the first place,

all of Lincoln's claims are barred by the applicable statute of limitations, and in any event, the claims alleging breaches of fiduciary duty fail to satisfy federal pleading standards. For the reasons that follow, the court will grant the motions.

## I.     **Background**[1]

All three parties to this action are associated with the insurance industry. Pennsylvania-based Lincoln is a property and casualty insurance company. (Doc. 1, ¶ 1.) Before Avalon became part of Kingsway, it was an Illinois provider of insurance and surety services; it is now a wholly owned subsidiary of Kingsway Financial Services, Inc., which has a business address in Ontario. (Id. ¶ 2.) Mattoni, a California-based insurance brokerage company, was an independent firm until October 2007, when it was acquired by ARM Holdings, Inc., an affiliate of Avalon. (Id. ¶ 3.) Mattoni operated as a separate subsidiary until May 1, 2009, when Mattoni began transacting its entire book of business under Avalon's name and licensing.[2] (Id.)

---

[1] Following the standard of review for a motion to dismiss under Rule 12(b)(6), the complaint's well-pleaded factual allegations are taken as true. See infra Parts II, III. Although the Federal Rules demand no "detailed" averments of fact in a complaint, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Those portions of the complaint that demonstrate the shortcomings disapproved of in Iqbal are disregarded. See Santiago v. Warminster Twp., 629 F.3d 121, 130–31 (3d Cir. 2010) (applying Iqbal in giving no presumption of truth to mere "conclusions").

[2] This court has jurisdiction over this case under 28 U.S.C. § 1332, based on complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000.

The insurance policy at the core of this dispute is one issued to a parcel-delivery servicer known as Moore Fogg's, a commercial-trucking company located in Pennsylvania. (Id. ¶¶ 6, 7, 9.) Starting in 2004, Moore Fogg's had begun procuring Commercial Truckers/Motor Carrier insurance for its vehicles and drivers from LGIC through Mattoni's office in Westlake Village, California.[3] (Id. ¶ 7.) In the continuance of this course of business, LGIC issued Moore Fogg's a police for the period from November 13, 2006, to November 13, 2007, carrying $1 million liability limits and $35,000 for uninsured/underinsured motorist (UM/UIM) coverage. (Id. ¶ 9.) The premium paid under this policy, as well as the policy itself, reflected the insured's choice of $35,000 in UM/UIM coverage and the rejection of stacked limits. (Id. ¶ 10.)

On February 6, 2007, one of Moore Fogg's insured trucks, driven by one of its employed drivers, collided with another vehicle on Interstate 95 in Delaware County, Pennsylvania, near the off-ramp for Route 476 North. (Id. ¶ 11.) Subsequent investigation determined that a "phantom vehicle"—one that was never identified—caused the accident by cutting in front of the Moore Fogg's truck while they were both southbound on I-95. (Id. ¶ 12.) The Moore Fogg's truck driver lost control of his vehicle, crossed the median into the northbound lanes, and crashed into a large truck. (Id.) Both vehicles burst into flames, and the results, for the driver of the Moore Fogg's truck, were fatal. (Id.)

---

[3] Mattoni was not licensed to do business in Pennsylvania. (Id. ¶ 8.)

The estate of the deceased driver filed suit against Lincoln under the UM/UIM coverage for $3 million, despite the policy documents stating that the UM/UIM coverage was limited to $35,000. (Id. ¶ 13.) During litigation, the estate raised two primary arguments against the UM/UIM coverage limits. First, the estate argued that no valid and effective write-down for UM/UIM coverage had been secured from Moore Fogg's, resulting in the UM/UIM limits matching the liability limits of $1 million. (Id. ¶ 14.) Second, when vehicles were added to Moore Fogg's policy in 2006, the renewal process failed to secure a new, signed waiver of stacking.[4] (Id.) According to the estate, the lack of a new stacking waiver created a presumption that stacking would apply. (Id.)

Between February and June of 2007, Lincoln investigated the estate's UM/UIM argument and determined that estate was correct: no valid and effective write-down for UM/UIM coverage had been secured by Avalon or Mattoni. (Id. ¶ 15.) Based on this finding, Lincoln concluded that a court applying Pennsylvania law would hold that the UM/UIM coverage limits would match the $1 million liability limits. (Id.)[5] Lincoln then settled the estate's claim on September 28, 2007, for a payment of $1 million. (Id. ¶ 17.)

---

[4] At the very least, the file for Moore Fogg's policy did not include a properly executed stacking-waiver form for the 2006–2007 policy year. (Doc. 1, ¶ 14.)

[5] Lincoln also investigated the estate's stacking claim, but "determined that the deceased driver would likely be considered a Class 2 Insured and would not get the benefit of stacking." (Doc. 1, ¶ 16.)

Lincoln submits that its decision to make this settlement was the "direct and proximate result of the errors and omissions of Avalon and Mattoni in failing to secure a proper write-down of UM/UIM coverage." (Id.) As damages, Lincoln seeks the difference between the $1 million it paid in settlement and the $35,000 that should have been the policy limits, i.e. $965,000, plus attorneys' fees and costs. (Id. ¶ 18.)

## II. **Standard of Review**

The Federal Rules of Civil Procedure provide for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007); Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 231 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 678-79 (citing Twombly, 550 U.S. at 556); see also Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).

**III.   Discussion**[6]

As mentioned above, Lincoln's complaint contains four counts. Count I is a claim for indemnity against Kingsway; Count II, also against Kingsway, claims a breach of contract; and Counts III and IV claim that Kingsway and Mattoni, respectively, breached their fiduciary duties to Lincoln. Both defendants raise statute-of-limitations defenses and argue in the alternative that the breach-of-fiduciary-duty claims were inadequately pleaded. The analysis begins with the statute-of-limitations defenses, as they put in issue whether the court may proceed to address the complaint on its merits.

**A.   Statutes of limitations**

**1.   General principles**

Under a strict reading of the Federal Rules of Civil Procedure, a defense based on a statute of limitations should be raised in the responsive pleading. See FED. R. CIV. P. 12(b) (requiring, with limited specific exceptions, that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading"). The bare language of Rule 12(b) notwithstanding, the court of appeals in this circuit has created an exception—appropriately called the "Third Circuit

---

[6] As subject-matter jurisdiction in this case is based on diversity of citizenship, Pennsylvania law applies to the parties' substantive claims, with the state's Supreme Court decisions binding on this court and the Superior Court decisions nonbinding but persuasive. State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 107 n.2 (3d Cir. 2009) (citing Jewelcor Inc. v. Karfunkel, 517 F.3d 672, 676 n.4 (3d Cir. 2008)); see also Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 91–92 (3d Cir. 2008).

Rule"—that allows a limitations defense to be raised in a Rule 12(b)(6) motion when "the time alleged in the statement of a claim shows that the cause of action has not been brough within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). If the "face of the complaint" does not make it "apparent" that the claim is time-barred, dismissal under Rule 12(b)(6) is inappropriate. Id. (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).

Both Kingsway and Mattoni argue that the Third Circuit Rule applies, contending that Lincoln's claims are plainly untimely based on the complaint's own terms; Lincoln insists otherwise. Although the matter of whether the limitations defenses can be *adjudicated* is a threshold question in disposing of the instant motions, reaching and answering this question first requires an explication of the applicable limitations statutes and related doctrines.

### 2.  **Applicable limitations periods**

The parties appear to agree on the time limits imposed by statute for the claims in Lincoln's complaint. A claim for breach of contract is subject to a four-year limitations period. 42 PA CONS. STAT. ANN. § 5525(a)(8); accord Benyamini v. St. Clair Real Estate Dev. Co., No. 09-0375, 2010 WL 1137936, at *4 (M.D. Pa. Mar. 19, 2010) (citing section 5525(a)(8)). Claims for indemnity, because of their "contractual nature," are also subject to a four-year limitations period. Gen. Motors Corp. v. Emerson Elec. Co., No. 85-5259, 1986 WL 2459, at *1 (E.D. Pa. Feb. 20, 1986) (citing Thermo King Corp. v. Strick Corp., 467 F.Supp. 75, 77 (W.D. Pa. 1979)). As

8

for claims for breaches of fiduciary duty, a two-year limitations period applies. 42 PA. CONS. STAT. ANN. §§ 5524(7); accord Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 422 (3d Cir. 2005) (citing 42 PA. CONS. STAT. ANN. § 5524); Wise v. Mortg. Lenders Network USA, Inc., 420 F. Supp. 2d 389, 395 (E.D. Pa. 2006) (same).

### B.   Accrual of claims: when limitations periods begin to run

Pennsylvania statutory law provides that "[t]he time within which a matter must be commenced under this chapter shall be computed . . . from the time the cause of action accrued." 42 PA. CONS. STAT. ANN. § 5502(a). A cause of action "accrues" when "the plaintiff could have first maintained the action to a successful conclusion." City of Phila. v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 121 (3d Cir. 1993) (quoting Kapil v. Assoc. of Pa. State Coll. & Univ. Faculties, 470 A.2d 482, 485 (Pa. 1983)); see also Foley v. Pittsburgh-Des Moines Co., 68 A.2d 517, 535 (Pa. 1949).

The concept of maintaining an action "to a successful conclusion," although Pennsylvania jurisprudence has long phrased it in those terms, tends to be more misleading than self-explanatory. Courts have devoted many pages of their opinions to clarifying this concept. As the Third Circuit put it in 1985, a claim accrues in Pennsylvania "at the occurrence of the final significant event necessary to make the claim suable." Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d Cir. 1985) (quoting Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co., 372 F.2d 18, 20 (3d Cir. 1966)) (internal quotation marks omitted). More recently, the Pennsylvania Supreme Court provided a new gloss on accrual: the statute of limitations begins to run "as soon as the right to institute and maintain a suit

arises." Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005) (citing Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983)).

A critical point in understanding and applying the concept of accrual is the recognition that a cause of action usually accrues at the time the injury actually occurs—that is, at the time that the legal right in question was violated—even if the plaintiff was unaware of the extent of the injury at that time or even of the fact that an injury had been inflicted at all. See, e.g., William A. Graham Co. v. Haughey, 646 F.3d 138, 147 (3d Cir. 2011) ("Accrual, as we have said, occurs once events satisfying all the elements of a cause of action have taken place."); Fine, 870 A.2d at 857 ("Generally speaking, in a suit to recover damages for personal injuries, [the right to institute and maintain a suit] arises when the injury is inflicted.") (internal citations omitted); Ctr. Concrete Co. v. AGI, Inc., 559 A.2d 516, 518–19 (Pa. 1989) ("It may sometimes be difficult to determine at just what point in time an injury has occurred or a duty has been breached. Nonetheless . . . the wronged party's cause of action ordinarily accrues at that point in time, and the statute of limitations begins to run therefrom.") (internal citation omitted). Indeed, it is "well settled" under Pennsylvania law that "mere mistake, misunderstanding or lack of knowledge" does not toll a statute of limitations. Garcia v. Cmty. Legal Servs. Corp., 524 A.2d 980, 985 (Pa. Super. 1987) (citing Walters v. Ditzler, 227 A.2d 833, 835 (Pa. 1967)); accord Sadtler v. Jackson-Cross Co., 587 A.2d 727, 731 (Pa. Super. 1991). Simply put, accrual "is an objective feature of any extant claim: the question is whether all

of its elements have come into existence such that an omniscient plaintiff could prove them in court." Haughey, 646 F.3d at 146.

A final important point is that although accrual occurs at the time of the injury, which *usually* marks the start of the period in which claims based on that injury may be made in court, equitable doctrines may *toll the running of the statute* until some later date.[7] Accrual of an action and the tolling of the limitations period are distinct concepts; accrual is an objective matter, whereas questions of equitable tolling are usually heavily dependent on the specific facts of the particular case.

### C. Lincoln's breach-of-contract and indemnity claims against Kingsway[8]

#### 1. Untimeliness is apparent on the face of the complaint

Lincoln's breach-of-contract and indemnity claims against Kingsway are based on the alleged errors and omissions that Kingsway, or Mattoni on behalf of Kingsway, committed in procuring a Lincoln insurance policy for Moore Fogg's for the one-year period beginning November 13, 2006. (Doc. 1, ¶¶ 7, 9, 17.) Since these alleged errors and omissions comprise the contractual breach, Lincoln's cause of action accrued at the time of those errors and omissions, which a reasonable

---

[7] For example, Pennsylvania recognizes the equitable-tolling doctrine known as the "discovery rule," under which the limitations period is tolled if an injury "is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period," with the period beginning to run only when "discovery of the injury is reasonably possible." Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997).

[8] Lincoln's indemnity and breach-of-contract claims are based on the same allegations in the complaint and subject to the same limitations period, allowing them to be addressed in the same discussion.

reading of the complaint implies took place no later than the effective date of the policy: November 13, 2006. Sadtler v. Jackson-Cross Co., 587 A.2d 727, 731 (Pa. Super. 1991) ("Generally, an action founded on a contract accrues when the contract is breached.").

Even by the most indulgent reading of the complaint, Lincoln's contract claim accrued no later than sometime in February 2007, at which point Lincoln was investigating the merits of the $3 million claim against it that were grounded in the Moore Fogg's policy. (Doc. 1, ¶¶ 13–15.) Since claims for breach of contract are subject to a four-year limitations period, the very latest that Lincoln could have brought this claim is February 2011. Lincoln filed its complaint on June 13, 2011.

The untimeliness of the breach-of-contract claim is apparent from the allegations of the complaint, rendering the Third Circuit Rule applicable and allowing Kingsway's limitations defense to be adjudicated within the context of the instant motions to dismiss. Lincoln's breach-of-contract claim is statutorily barred, as is its indemnity claim, and both must be dismissed.

### 2.     **Certainty of damages is not a precondition for accrual**

Lincoln takes the position that its breach-of-contract and indemnity claims did not accrue until it sustained actual damages. (Doc. 23, at 10.) Pointing out that a claim for breach of contract requires a plaintiff to allege the existence of a contract, a breach of that contract, and resultant damages, Lincoln implies that the earliest date by which its claims could have accrued is September 28, 2007, when it settled the claims of the driver's estate for $1 million. (Id.) See also Ware v. Rodale Press,

Inc., 322 F.3d 218, 225-26 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999)) (setting forth the elements of a claim for breach of contract). Lincoln insists that it could not have instituted a contract or indemnity claim at any earlier time because "[w]ithout a claim and an obligation to pay, [Lincoln] might *never* have suffered any damages." (Doc. 23, at 11.) It cites two cases in support of the proposition that courts reject "mere threat of future injury as a plausible element of damages" in a contract action, (see id.), although neither case lends itself to the argument Lincoln makes.

The first case that Lincoln cites is Solomon v. Guardian Life Ins. Co., No. 96-1597, 1997 WL 611586 (E.D. Pa. Sept. 26, 1997), which addressed a claim based on the method of paying an amount of dividends paid pursuant to a life-insurance policy. Id. at *2. In that case, the plaintiff, Solomon contended that the dividends from his life-insurance policy were lower than they should have been and he had suffered damages as a result. Id. However, the court found that no facts had been pleaded or brought to its attention that would demonstrate that "Solomon intended to be paid dividends on a periodic basis, had actually been paid dividends, or ever asked to be paid dividends." Id. Based on this finding, the court concluded: "Solomon cannot possibly be harmed by lower dividend earnings when he had neither any intention or expectation of receiving nor was entitled to receive dividend payments in the first place under the agreed arrangement he pleaded." Id. The instant case is readily distinguishable from Solomon, which involved facts in no way analogous to those that Lincoln averred in its complaint, and the outcome of

13

which hinged on the court's conclusion that Solomon had failed to plead any injury – actual, speculative, or otherwise.

Lincoln's second-cited case emphasizes the ultimate need for proof of damages in a contract claim. Ware v. Rodale Press, Inc., 322 F.3d 218 (3d Cir. 2003). According to Ware, a successful breach-of-contract claim requires that damages be more than merely theoretical or possible:

> To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a reasonable certainty. . . . At a minimum, reasonable certainty embraces a rough calculation that is not too speculative, vague or contingent upon some unknown factor.

Id. at 225–26 (citations omitted) (quoting ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 668 (3d Cir.1998); Spang & Co. v. U.S. Steel Corp., 545 A.2d 861, 866 (Pa. 1988)) (internal quotation marks omitted). The cited proposition of law is correct and binding, but inapposite. The quoted language from Ware addresses what a plaintiff must *prove* and what *evidence* is required; it has no bearing on pleading standards.

Rather, contrary to Lincoln's position, and as defendants correctly state, the extent or amount of damages need not be certain in order for a breach-of-contract claim to survive a motion to dismiss. The Pennsylvania Superior Court has explicitly rejected the claim that filing suit is appropriate only when the full extent of damages is known. Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1041–42 (Pa. Super. 1999). As the Adamski court stated, "for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise

amount or extent of damages is determined." Id. at 1042 (citing Manzi v. H.K. Porter Co., 587 A.2d 778 (Pa. Super. 1991); Liberty Bank v. Ruder, 587 A.2d 761, 765 (Pa. Super. 1991); Pashak v. Barish, 450 A.2d 67 (Pa. Super. 1982)). Ruder, cited in Adamski, adds clarity to the same point. In that case, the plaintiff alleged damages based on a loan to a debtor who defaulted, which would give rise to the future need to "bear the costs of pursuing the debtor and guarantors of the loan." Ruder, 587 A.2d at 765. On review of a motion to dismiss, the court held it "unnecessary for [the plaintiff] to prove a specific damage amount at this preliminary stage of the proceedings," remarking that proof of damages "will be required . . . *at trial*." Id. (citing Curran v. Stradley, Ronon, Stevens & Young, 521 A.2d 451, 455 (Pa. Super. 1987)).

### 3. Case law addressing the common-law right to indemnification is irrelevant to contract-based indemnification.

Lincoln contends that its indemnification claims did not accrue until payment was actually made—in this case, the settlement payment made on September 28, 2007. (Doc. 23, at 12.) If its indemnification claim were based on the common-law right to indemnity, Lincoln would be correct. Transp. Ins. Co. v. Spring-Del Assocs., 159 F. Supp. 2d 836, 840 (E.D. Pa. 2001) (citing Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel, 832 F.Supp. 922, 934-35 (E.D. Pa. 1993); Rivera v. Phila. Theological Seminary, 507 A.2d. 1, 14 (Pa. 1986); McClure v. Deerland Corp., 585 A.2d 19, 22–23 (Pa. Super. 1991)). But when an indemnity claim is based on a contract of indemnity, it accrues "as soon as the liability has become

fixed and established, even though the indemnitee has sustained no actual loss when he seeks to recover on the contract." CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co., No. 08-2022, 2008 WL 4559563, at *8 (E.D. Pa. Oct. 8, 2008) (citing Crestar Mtg. Corp. v. Peoples Mtg. Co., 818 F. Supp. 816, 821 n.4 (E.D. Pa. 1993)). Lincoln's claim for indemnity is thus time-barred and must be dismissed.

### D.    Equitable tolling and Lincoln's claims for breach of fiduciary duty

Lincoln admits that the two-year statute of limitations applicable to claims for breach of fiduciary duty would bar its claims in this case unless an equitable tolling doctrine applies—as Lincoln contends it does. But the first case cited by Lincoln supports its position only if one reads no more than the quotation that Lincoln provides in its brief (Doc. 23, at 17):

> [E]quitable tolling will suspend the running of the statute of limitations "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."

In re Mushroom Transp. Co., Inc., 382 F.3d 325, 338–39 (3d Cir. 2004) (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)). Lincoln emphasizes condition (2), implying that "the continued existence of a corporate family relationship" among the parties (Doc. 23, at 16) constitutes "some extraordinary way" of preventing Lincoln from asserting its rights. However, the sentence immediately following the above-quoted passage from In re Mushroom substantially impacts the general breadth and applicability of equitable tolling:

16

"Like the discovery rule, equitable tolling requires the plaintiff to demonstrate 'that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.'" In re Mushroom, 382 F.3d at 339 (quoting Oshiver, 38 F.3d at 1390). Lincoln has presented nothing in its pleadings or briefing that suggests it lacked some "essential information" bearing on its claim, strongly suggesting that equitable tolling does not save Lincoln's claims.

Regardless, Lincoln perseveres, turning to a specific equitable-tolling doctrine—the "adverse domination" doctrine—in an attempt to keep its breach-of-fiduciary-duty claims in court. The doctrine of adverse domination tolls the statute of limitations when "the corporate entity"—in this case, Lincoln—"is controlled by the alleged wrongdoers"—in this case, Kingsway.[9] In re O.E.M./Erie, Inc., 405 B.R. 779, 785 (Bankr. W.D. Pa. 2009) (citing In re Reading Broad., Inc., 390 B.R. 532, 552 (Bankr. E.D. Pa. 2008)). As explained in In re O.E.M., the rationale for the adverse-domination doctrine is the presumption that "officers and directors who have

---

[9] Lincoln's complaint states the corporate relationships among the parties only partially and vaguely, but its brief (Doc. 23) opposing the motions to dismiss and supporting affidavit (Doc. 23-1) lend some clarity. According to these materials, "Avalon and [Lincoln] were both indirect subsidiaries, through Kingsway America Inc., of Kingsway Financial Services, Inc., a Canadian public company and insurance holding company." (Doc. 23, at 17 (citing Doc. 1, ¶ 2; Doc. 23-1, ¶¶ 6–9).) The supporting affidavit contains the declarations of Gary J. Orndorff, an employee of Lincoln since 1986, one of its directors since 1987, and currently the president and chief operating officer. (Doc. 23-1, ¶¶ 1–4.) According to Mr. Orndorff, the Kingsway entities "maintained complete control over the selection of LGIC's Board of Directors" at all times relevant to this case, which remained the status quo until at least sometime in mid-to-late 2009. (Id. ¶¶ 17–21.)

harmed the entity cannot be expected to take legal action against themselves." Id. (quoting Freeland v. Enodis Corp., 540 F.3d 721, 741 (7th Cir. 2008)).

Problematically for Lincoln, Pennsylvania state courts have yet to use or even discuss the adverse-domination doctrine, id., despite having adopted other equitable-tolling doctrines such as the discovery rule and the doctrine of fraudulent concealment. See, e.g., Fine v. Checcio, 870 A.2d 850, 860–61 (Pa. 2005) (discovery rule); Romah v. Hygienic Sanitation Co., 705 A.2d 841, 858 (Pa.Super. 1997) (fraudulent concealment). It is true that federal courts applying Pennsylvania law have employed the doctrine of adverse domination. In re O.E.M., 405 B.R. at 785–86 (collecting cases). However, as In re Mushroom implied, the basis for federal courts' determination that adverse domination is a viable principle in Pennsylvania "stems from the similarity between the 'discovery rule' . . . and the doctrine of adverse domination. The courts view 'adverse domination' merely as the corporate equivalent of the discovery rule." In re O.E.M., 405 B.R. at 785–86 (citing Resolution Trust Corp. v. Farmer, 865 F. Supp. 1143, 1154 n.11 (E.D. Pa.1994)). Moreover, the In re O.E.M. court justified its application of the adverse-domination doctrine on the specific facts of that case, which involved shareholders in a closely held corporation. Id. at 786. Not only is the complex corporate structure in the instant matter vastly different from a closely held corporation with relatively few shareholders (who may also be the corporation's officers and directors), but the fundamental basis cited by other courts for applying the doctrine of adverse domination under Pennsylvania law (despite its utter absence from Pennsylvania

18

jurisprudence)—the likeness between adverse domination and the discovery rule—counsels against its application here, as the instant case presents no facts akin to a situation in which the discovery rule would apply. Even Lincoln recognizes that "the adverse domination doctrine does not provide a perfect framework for equitable tolling here." (Doc. 23, at 18.)

In effect, on the basis of nonbinding authority, Lincoln asks the court to extend the doctrine of adverse domination to an area of Pennsylvania law beyond its prior reach, and without the doctrine ever having been adopted by Pennsylvania state courts. However compelling the equitable considerations may be for making such an extension, the court is constrained to decline Lincoln's request. It is the province of the Pennsylvania state courts, not federal courts sitting in diversity, to adopt and extend doctrines of state law.

No principle of equitable tolling applies to Lincoln's breach-of-fiduciary claims. The statute of limitations has run on them, and they must be dismissed.

**IV. Conclusion**

For the above-stated reasons, the court will grant the motion to dismiss. Since the claims are barred by the applicable statutes of limitations, amendment would be futile. An appropriate order follows.

                                            S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge

Dated:       May 17, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINCOLN GENERAL INSURANCE COMPANY,** | : CIVIL ACTION NO. 1:11-CV-1127 |
| | : |
| | : **(Judge Conner)** |
| **Plaintiff** | : |
| | : |
| v. | : |
| | : |
| **KINGSWAY AMERICA AGENCY, INC.,** f/k/a **AVALON RISK MANAGEMENT, INC.,** and **MATTONI INSURANCE BROKERAGE, INC.,** | : |
| | : |
| **Defendants** | : |

## **ORDER**

AND NOW, this 17th day of May, 2012, upon consideration of the motions to dismiss the complaint (Docs. 9, 10) filed by Kingsway America Agency, Inc., and by Mattoni Insurance Brokerage, Inc., and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motions to dismiss (Docs. 9, 10) are GRANTED.

2. Because amendment to the complaint would be futile, the complaint is DISMISSED with prejudice.

3. The Clerk of Court is directed to CLOSE the case.

                                                         S/ Christopher C. Conner
                                                         CHRISTOPHER C. CONNER
                                                         United States District Judge