# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINCOLN GENERAL INSURANCE COMPANY,** | : | CIVIL ACTION NO. 1:11-CV-1127 |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **KINGSWAY AMERICA AGENCY, INC., f/k/a AVALON RISK MANAGEMENT, INC., and MATTONI INSURANCE BROKERAGE, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter is plaintiff Lincoln General Insurance Company's ("LGIC") motion for reconsideration (Doc. 36) of this court's Memorandum and Order (Doc. 35), dated May 15, 2012, granting defendants Kingsway America Agency, Inc., f/k/a Avalon Risk Management, Inc.'s ("Kingsway") and Mattoni Insurance Brokerage, Inc.'s motions to dismiss (Doc. 9, 10).[1]  For the reasons that follow, the motion will be granted.

---

[1] Kingsway correctly notes, and LGIC does not contest, that LGIC has not moved for reconsideration of the portion of the court's order dismissing defendant Mattoni Insurance Brokerage, Inc.  (See Doc. 38, at 5, Part A; see generally Docs. 37, 39).

1

I. **Background**[2]

The underlying complaint involves an accident with a parcel delivery truck owned by Moore Fogg's, a commercial trucking company based in Folcroft, Pennsylvania, and insured by LGIC though Mattoni — a California-based insurance brokerage firm. (Doc. 1, ¶¶ 6, 7, 9). The accident occurred on February 6, 2007, when Moore Fogg's truck collided with a "phantom vehicle" — one that was never identified — killing the driver of the Moore Fogg's truck. (Id. ¶¶ 11, 12). At the time, Moore Fogg's was covered by a Commercial Truckers/Motor Carrier insurance policy through LGIC. (Id. at ¶ 7). The policy covered the period from November 13, 2006, through November 13, 2007, and carried a $1 million liability limit and $35,000 for uninsured/underinsured motorist (UM/UIM) coverage. (Id. ¶ 9).

Following the crash, the estate of the driver filed suit against LGIC under the UM/UIM coverage for $3 million, despite policy language stating that the UM/UIM coverage was limited to $35,000. (Id. at 13). The estate argued that the UM/UIM limits did not apply because neither Avalon nor Mattoni had obtained a valid and effective write-down for UM/UIM coverage.[3] (Id. ¶ 14, 15). Between February 2007

---

[2] An extensive discussion of the facts of this case is presented in ths court's March 15, 2012 Memorandum and Order (Doc. 35), familiarity with which is presumed. The court will reiterate only those facts pertinent to the instant motion.

[3] Beginning in 2007, through a series of corporate transactions, Mattoni eventually began transacting its entire book of business under the Avalon name. (See id. ¶¶ 2, 3).

2

and June 2007, LGIC investigated the estate's claim and ultimately agreed that, under Pennsylvania law, the UM/UIM limits would match those of the liability limits, in this case $1 million, and settled the case for this amount on September 28, 2007. (Id. 15, 17).

On June 13, 2011, LGIC brought suit (Doc. 1) against Avalon and Mattoni, alleging breach of contract and breach of fiduciary duties and claiming that the decision to settle was the "direct and proximate result of the errors and omissions of Avalon and Mattoni in failing to secure a proper write-down of UM/UIM coverage." (Id.) On August 25, 2011, Avalon and Mattoni filed separate motions to dismiss (Doc. 9, 10) based on the bar of the applicable statutes of limitations. On May 17, 2012, this court issued a Memorandum and Order, concluding that the claims were time-barred, and dismissing the case. On May 31, 2012, LGIC filed a motion for reconsideration (Doc. 36). The motion has been fully briefed (Docs. 37, 28, 39), and for the reasons that follow, the motion will be granted.

## II. **Legal Standard**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). A court should grant a motion for reconsideration only "if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." General Instrument Corp. of Delaware v. Nu-Tek Electronics & Mfg. Inc., 3 F. Supp. 2d 602, 606 (E.D.

Pa. 1998) (citations omitted). "A motion for reconsideration is not properly grounded on a request that the Court simply rethink a decision it has already made." Douris v. Schweiker, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)). Furthermore, motions for reconsideration should "not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." Hill v. Tammac Corp., No. 1:05-CV-1148, 2006 WL 529044, at *2 (M.D. Pa. 2006) (citing McDowell Oil Servs., Inc. v. Interstate Fire & Gas Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993)). Motions for reconsideration are generally disfavored. Collins v. D.R. Horton, Inc., 252 F. Supp. 2d 936, 938 (D. Ariz. 2003).

The standard of review for a motion for reconsideration relates back to the standard applicable in the underlying decision. Fiorelli, 337 F.3d at 287-88; Pittsburgh Terminal Corp. v. Balt. & Ohio R.R., 824 F.2d 249, 253 (3d Cir. 1987). In the case *sub judice*, the court's decision was made within the ambit of Federal Rule of Civil Procedure 12(b)(6). (See Docs. 9, 10). Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d

4

170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1947 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to

5

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 662, 129 S. Ct. at 1949. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).

### III. Discussion

In Pennsylvania, the statute of limitations on a cause of action begins to run "from the time the cause of action accrued." 42 PA. CONS. STAT. ANN. § 5502(a). A cause of action "accrues" when "the plaintiff could have first maintained the action to a successful conclusion." City of Phila. v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 121 (3d Cir. 1993) (quoting Kapil v. Assoc. of Pa. State Coll. & Univ. Faculties, 470 A.2d 482, 485 (Pa. 1983)). The parties agree that an action for indemnity is subject to a four-year statute of limitations. 42 PA. CONS. STAT. ANN. § 5525(a)(8); see also Insurance Com'r of State of Connecticut v. Novotny, No. 07-262, 2009 WL 1653553, at *3 (W.D. Pa. June 11, 2009).

Pennsylvania recognizes two distinct forms of contract-based indemnity: indemnity against loss and indemnity against liability. Coleman v. City of Bradford, 204 A.2d 260, 261 (Pa. 1964). When a contract provides for indemnity *against liability*, "there is a right of recovery as soon as a liability is incurred;" when it provides for indemnity *against loss*, "there is no right of recovery until a loss occurs." Id. (quoting Faulkner v. McHenry, 83 A. 827, 828 (Pa. 1912)). In Coleman, the court differentiated between these two types of indemnification:

6

> [W]here the contract is strictly one of indemnity the indemnitee cannot
> recover until he has suffered actual loss or damage. The mere
> incurring of liability gives him no such right; but, where the contract is
> to protect against liability, the indemnitee may recover as soon as his
> liability has become fixed and established, even though he has
> sustained no actual loss or damage at the time he seeks to recover.

Id. (internal citation and quotations omitted). Put another way, the classification of the indemnity provision as against loss or against liability determines when the legal right to bring a claim accrues, and by extension, when the clock begins to tick on the statute of limitations. See Great Am. Ins. Co. of N.Y. v. Int'l Custom Prods., Inc., No. 09-124, 2011 WL 1230476, at *7 (W.D. Pa. March 31, 2011) *modified in part on other grounds by* 2011 WL 7037123 (W.D. Pa. Oct. 31, 2011).

An action for indemnification against loss typically accrues at the time of "actual payment on behalf of the obligation of the indemnitor." Novotny, 2009 WL 1653553, at *3; see also McClure v. Deerland Corp., 585 A.2d 19, 23 (Pa. Super. 1991) ("Any action for indemnification before . . . payment . . . is premature.") (internal citation and quotations omitted). By contrast, Pennsylvania courts have not expressly defined "fixed and established" for the purpose of accruing a cause of action for indemnity against liability. But, as the Western District of Pennsylvania recognized in Novotny, other jurisdictions have held that a claim does not become fixed and established at the "mere assertion of a claim against the indemnitee," but only accrues once "the claim against the indemnitee is completely resolved." Id. at *4 (quoting Burns & McDonnell Engineering Co. v. Torson Const. Co., 834 S.W.2d 755, 758 (Mo. App. 1992)). This generally means that the cause of action does not

7

accrue until a settlement agreement has been reached or a judgment entered in the underlying action. Id.

These two variations on contract indemnity are not mutually exclusive. A contract may provide for *both* indemnification against loss and indemnification against liability. See, e.g., Burns & McDonnell, 834 S.W.2d at 758 ("There are also contracts where indemnification against loss and liability are intermixed."); Amoco Oil Co. v. Liberty Auto & Elec. Co., 810 A.2d 259, 264 (Conn. 2002) ("[W]e also have acknowledged that some indemnification agreements constitute agreements to indemnify against both loss and liability."). The contract *sub judice* is one such example. The contract indemnifies LGIC against "any and all claims, suits hearings actions, damages of any kind, *liability*, fines, penalties, *loss* or expense." (Doc. 1-2 at 16) (emphasis added). Accordingly, LGIC could potentially have different causes of action for indemnification against loss *or* liability, each with potentially distinct dates of accrual. See Novotny, 2009 WL 1653553, at *5 ("While Pennsylvania courts have yet to address the issue of accrual in the context of agreements which indemnify against both liability and loss, other jurisdictions have tended towards the view that such contracts give rise to separate causes of action against both loss and liability, with independent accrual dates for each.").

Count I of the complaint pleads a claim for indemnity against loss. LGIC alleges that Kingsway's failure to secure a proper write-down of UM/UIM coverage for the Moore Fogg's account "directly and proximately caus[ed] LGIC [a] loss of a minimum of $965,000." (Doc. 1 at 6). LGIC settled its claim with the insured

driver's estate on September 28, 2007, but the complaint does not state when payment was actually made to the estate. However, even if Count I constituted a claim for indemnification against liability, the claim did not become "fixed and established" until LGIC reached a settlement agreement with the estate – September 28, 2007. See Great Am. Ins. Co. of N.Y. v. Int'l Custom Prods., Inc., No. 09-124, 2011 WL 1230476, at *7 (W.D. Pa. March 31, 2011) ("Most courts have concluded that the resolution of the underlying claim does not occur until a settlement agreement is reached or judgment is entered."), *modified in part on other grounds by* 2011 WL 7037123 (W.D. Pa. Oct. 31, 2011).

The earliest date by which the statue of limitations period for Count I could have begun is the date of settlement, September 28, 2007. LGIC instituted this action on June 13, 2011, thus well within the four year statute of limitations. In its earlier memorandum, the court held that LGIC's claim for indemnification accrued on November 13, 2006, based on the date that Kingsway allegedly committed errors in securing an insurance policy with Moore Fogg's in alleged violation of its agreement with LGIC. (Doc. 35 at 11). The court then stated that the latest the claim could have accrued was February 2007, the time at which LGIC began

investigating the merits of the estate's $3 million claim, still falling well outside the statute of limitations. This was error. The court will therefore grant LGIC's motion for reconsideration, vacating its order of dismissal as to Count I and reinstating LGIC's claim for indemnification. An appropriate order will issue.

          S/ Christopher C. Conner  
          CHRISTOPHER C. CONNER  
          United States District Judge

Dated:     February 6, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINCOLN GENERAL** | : | **CIVIL ACTION NO. 1:11-CV-1127** |
| **INSURANCE COMPANY,** | : | |
| | : | **(Judge Conner)** |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **KINGSWAY AMERICA AGENCY,** | : | |
| **INC.,** f/k/a **AVALON RISK** | : | |
| **MANAGEMENT,** | : | |
| **INC.,** and **MATTONI INSURANCE** | : | |
| **BROKERAGE, INC.,** | : | |
| | : | |
| Defendants | : | |

## ORDER

And now, this 6th day of February, upon consideration of plaintiff Lincoln General Insurance Company's ("LGIC") motion for reconsideration (Doc. 36), and for the reasons discussed in the accompanying memorandum, it is hereby ORDERED that:

1. LGIC's motion for reconsideration is GRANTED.

2. The memorandum and order (Doc. 35), dated May 17, 2012, granting defendants Kingsway America Agency, Inc.'s motion to dismiss is hereby VACATED with respect to Count I of LGIC's complaint.

3. Count I of LGIC's complaint is hereby REINSTATED.

    S/ Christopher C. Conner
    CHRISTOPHER C. CONNER
    United States District Judge